**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| EDDIE J. SYKES, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | )　　Case No. 09−cv−0941−MJR−SCW |
| | ) |
| SARAH FARRIS & MARCIA HILL, | ) |
| | ) |
| Defendants. | ) |
| | ) |
| | ) |

# REPORT AND RECOMMENDATION

**WILLIAMS, Magistrate Judge:**

This matter has been referred to United States Magistrate Judge Stephen C. Williams by United States District Judge Michael J. Reagan pursuant to pursuant to 28 U.S.C. §§ 636(b)(1)(B) and (C), Federal Rule of Civil Procedure 72(b), and Local Rule 72.1(a) for a Report and Recommendation on the issue of whether Plaintiff exhausted his administrative remedies with the Illinois Department of Corrections. It is **RECOMMENDED** that the Court **FIND** that Plaintiff properly exhausted his claims as to Defendants Farris and Hill, but only as to the administrative complaints Plaintiff filed in June 2009; that the Court **GRANT IN PART and DENY IN PART** Defendant Farris' Motion for Summary Judgment (Doc. 52); and **GRANT IN PART and DENY IN PART** Defendant Hill's Motion for Partial Summary Judgment (Doc. 54); and that the Court **ADOPT** the following findings of fact and conclusions of law.

## BACKGROUND

This matter stems from a Complaint filed by *pro se* Plaintiff Eddie Sykes ("Sykes") on November 9, 2009, alleging a litany of constitutional complaints against thirty defendants. After District Judge Reagan issued a threshold order pursuant to 28 U.S.C. § 1915A (Doc. 14), and Defendant failed to serve process on one defendant (*See* Doc.43), two defendants remain in this

case. Sykes alleges that Sarah Farris and Marcia Hill, both nurses at Pinckneyville Correctional Center, were deliberately indifferent to his longstanding prostate problems, and that Nurse Hill was unresponsive to his concerns about contracting crabs or a skin infection in February 2009, all in violation of his *Eighth Amendment* rights.

Now before the Court for a Report and Recommendation are two motions: Farris' Motion for Summary Judgment (Doc. 52) and Hill's Motion for Partial Summary Judgment (Doc. 54). Each motion alleges that Sykes failed to exhaust his administrative remedies as required by the Prisoner Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a).

Per Defendants' motions, the Illinois Administrative Review Board ("ARB") is in possession of 357 pages of records pertaining to Sykes' grievances dating back to October 20, 2008, when Sykes claims he was first mistreated. Of those pages (according to Defendants), only the following pertain to Nurses Farris and Hill during the timeframe relevant to this case:

1. A June 22, 2009 grievance complaining of Farris' treatment of Sykes' prostate (Doc. 53-2, 1);

2. A February 17, 2009 grievance complaining that Hill ignored Sykes' concerns about symptoms he evinced after sitting in the same barber chair as an inmate who had crabs or MRSA (Methicillin-resistant Staphlococcus aureus) (Doc. 59-2, 18–19);[1]

3. A June 24, 2009 grievance complaining of Hill's treatment of Sykes' prostate (Doc. 55-2, 1).

. But defendants claim that, because the ARB has no record of final rulings on the June grievances, Sykes failed to exhaust his administrative remedies as it pertains to those June grievances.

Sykes countered Defendants' motions by asserting that, in addition to those complaints, he filed an emergency grievance against Nurse Hill on January 30, 2009 ("the January grievance" (*See* Doc. 61, 1, 3), plus emergency grievances against Nurse Farris on October 20 and October 27, 2009

---

[1] Defendants cede that Sykes exhausted the February 17 grievance (Doc. 54, 6), so that claim, which survived District Judge Reagan's threshold order, survives this ruling as well.

(Doc. 61, 5–6).  Further, Sykes claimed he did attempt to exhaust the June grievances against Hill and Farris, but that the June grievances went unanswered by Grievance Officer Kim Deen (Doc. 61, 6, 9).

So pursuant to *Pavey v. Conley*, 544 F.3d 739 (7th Cir. 2008), the Court conducted an evidentiary hearing on December 21, 2011.  Specifically, the Court inquired into whether Sykes made and exhausted the January grievance, whether he attempted to exhaust the June grievances, and whether he made and exhausted the October grievances.

Shortly before the hearing, Defendant filed supplemental exhibits that better documented the grievance procedures as they pertained to Sykes.  (*See* Docs. 70-2, 70-3).  Those exhibits included Sykes' cumulative counseling summary and grievance committee logs for December 2008, February 2009, April 2009, October 2009, and November 2009.  At the hearing, the Plaintiff testified, as did ARB record custodian Sarah Johnson and Pinckneyville Grievance Officer Kim Deen.  Based on the hearing testimony, the extensive documentary evidence submitted by all parties, the Court finds as follows.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

Summary Judgment is proper only "if the admissible evidence considered as a whole shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Dynegy Mktg. & Trade v. Multiut Corp.*, 648 F.3d 506, 517 (7th Cir. 2011) (internal quotation marks omitted), *citing* FED. R. CIV. P. 56(a).  On Summary Judgment, the Court construes all facts in the light most favorable to the non-moving party (here, Sykes) and draws all reasonable inferences in his favor.  *Ogden v. Atterholt,* 606 F.3d 355, 358 (7th Cir. 2010).[2]  But in the context of a

---

[2] In *Pavey*, the Seventh Circuit Court of Appeals rejected as unpersuasive the Ninth Circuit Court of Appeals' approach of raising the affirmative defense of failing to exhaust remedies as an "unenumerated Rule 12(b) motion." *Pavey*, 544 F.3d 739, 741 (7th Cir. 2008).  As a result, this Court typically handles the issue of exhaustion on a motion for summary judgment rather than a motion to dismiss.

hearing on failure to exhaust administrative remedies, the Court must resolve any factual disputes material to the exhaustion issue. *Pavey v. Conley*, 544 F.3d 739, 742 (7th Cir. 2008).

Lawsuits filed by prisoners are governed by 42 U.S.C. § 1997e(a), the Prison Litigation Reform Act ("PLRA"). The PLRA states, in pertinent part, that "no action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such *administrative remedies as are available are exhausted.*" 42 U.S.C. § 1997e(a) (emphasis added). "The contours of the exhaustion requirement are set by the prison grievance system in each state." *Jones v. Bock*, 549 U.S. 199, 218 (2007). An inmate must take all the steps required by the prison or jail's grievance system in order to properly exhaust his administrative remedies. *Ford v. Johnson*, 362 F.3d 395, 397 (7th Cir. 2004); *Pozo v. McCaughtry*, 286 F.3d 1022, 1023–24 (7th Cir. 2002). The Seventh Circuit requires strict adherence to the PLRA's exhaustion requirement. *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006) (noting "[t]his circuit has taken a strict compliance approach to exhaustion.").

But the PLRA's plain language makes clear that an inmate is required to exhaust only those administrative remedies that are available to him. **42 U.S.C. § 1997e(a).** The Seventh Circuit has held that administrative remedies become "unavailable" when prison officials fail to respond to inmate grievances. *Lewis v. Washington*, 300 F.3d 829, 833 (7th Cir. 2002).

In *Pavey*, the Seventh Circuit held that "debatable factual issues relating to the defense of failure to exhaust administrative remedies" are not required to be decided by a jury but are to be determined by the judge. **Pavey, 544 F.3d at 740–41.** Thus, where failure to exhaust administrative remedies is raised as an affirmative defense, the Court set forth the following recommendations:

> The sequence to be followed in a case in which exhaustion is contested is therefore as follows: (1) The district judge conducts a hearing on exhaustion and permits whatever discovery relating to exhaustion he deems appropriate. (2) If the judge determines that the prisoner did not exhaust his administrative remedies, the judge will then determine whether (a) the plaintiff has failed to exhaust his administrative

remedies, and so he must go back and exhaust; (b) or, although he has no unexhausted administrative remedies, the failure to exhaust was innocent (as where prison officials prevent a prisoner from exhausting his remedies), and so he must be given another chance to exhaust (provided that there exist remedies that he will be permitted by the prison authorities to exhaust, so that he's not just being given a runaround); or (c) the failure to exhaust was the prisoner's fault, in which event the case is over. (3)If and when the judge determines that the prisoner has properly exhausted his administrative remedies, the case will proceed to pretrial discovery, and if necessary a trial, on the merits; and if there is a jury trial, the jury will make all necessary findings of fact without being bound by (or even informed of) any of the findings made by the district judge in determining that the prisoner had exhausted his administrative remedies.

*Id.* at 742.

## A. Exhaustion Requirement under Illinois Law

As an inmate confined within the Illinois Department of Corrections, Sykes was required to follow the regulations contained in the Illinois Department of Correction's Grievance Procedures for Offenders ("grievance procedures") to properly exhaust his claims. **20 Ill. Administrative Code § 504.800 et seq.** The grievance procedures first require inmates to speak with the counselor about their complaint. **20 Ill. Admin. Code § 504.810(a)**. Then, if the counselor does not resolve the issue, the inmate must file a grievance form directed to the Grievance Officer within 60 days of the incident. *Id.* The grievance form must:

contain factual details regarding each aspect of the offender's complaint, including what happened, when, where, and the name of each person who is subject of or who is otherwise involved in the complaint. The provision does not preclude an offender from filing a grievance when the names of individuals are not known, but the offender must include as much descriptive information about the individual as possible.

**20 Ill. Admin. Code § 504.810(a)(b).** "The Grievance Officer shall [then] consider the grievance and report his or her findings and recommendations in writing to the Chief Administrative Officer . . . [who]shall advise the offender of the decision in writing within 2 months after receipt of the written grievance, where reasonably feasible under the circumstances." **20 Ill. Admin. Code § 504.830(d).** If the inmate is not satisfied with the Chief Administrative Officer's response, he or

she can file an appeal with theDirector through the Administrative Review Board ("ARB"). The grievance procedures specifically state, "[i]f after receiving the response of the Chief Administrative Officer, the offender still feels that the problem, complaint or grievance has not been resolved to his or her satisfaction, he or she may appeal in writing to the Director within 30 days after the date of the decision. Copies of the Grievance Officer's report and the Chief Administrative Officer's decision should be attached." **20 Ill. Admin. Code § 504.850(a)**. "The Administrative Review Board shall submit to the Director a written report of its findings and recommendations." **20 Ill. Admin. Code § 504.850(e).** "The Director shall review the findings and recommendations of the Board and make a final determination of the grievance within 6 months after receipt of the appealed grievance, where reasonably feasible under the circumstances. The offender shall be sent a copy of the Director's decision." **20 Ill. Admin. Code § 504.850(f)**.

The grievance procedures do allow for an inmate to file an emergency grievance. In order to file an emergency grievance, the inmate must forward the grievance directly to the Chief Administrative Officer ("CAO") who may "[determine] that there is a substantial risk of imminent personal injury or other serious or irreparable harm to the offender" and thus the grievance should be handled on an emergency basis. **20 Ill. Admin. Code § 504.840(a)**. If an inmate forwards the grievance to the CAO as an emergency grievance, then the CAO "shall expedite processing of the grievance and respond to the offender" indicating to him which course he has decided is necessary after reading the grievance. **20 Ill. Admin. Code § 504.840(b)**. Once the CAO has informed the inmate of his decision, the inmate may then appeal that decision to the ARB on an expedited basis. **20 Ill. Admin. Code § 504.850(g)**.

### B. Analysis

Under the theory that Sykes failed to exhaust administrative remedies regarding his prostate-related deliberate indifference claims, Defendants moved for summary judgment on all such claims.

Sykes responded by arguing that he exhausted (or was thwarted in his attempts to exhaust) prostate-related grievances against Nurses Farris and Hill from January, June, and October 2009.

### 1.  January 2009 Grievance

By claiming the February and June grievances are the only ones present in the ARB's records, Defendants implicitly claim that Sykes did not exhaust any other administrative complaints, including the January 2009 grievance Sykes raises in his summary judgment response.  Unless they can carry their burden of showing Sykes failed to exhaust the January grievance, Defendants can be sued on the claims contained in it.

Sykes certainly made the grievance at the prison level.  He submitted the grievance as Plaintiff's Exhibit 2.  It is numbered as #2-11809, the same grievance number that appears next to one of Sykes' grievances in the February grievance committee log.  (Doc. 70-3, 2).  The counselor's log shows he filed the grievance on January 30, then again (as a non-emergency grievance) on February 9.

But the evidence shows Sykes failed to properly exhaust the January grievance.  The CAO reviewed the grievance on an emergency basis, signing it on February 5 and (as Sykes acknowledged in testimony) returning it to Sykes that day.  Sykes does not claim to have attempted an expedited appeal to the ARB.  Instead, Sykes re-submitted the grievance as a non-emergency in late February, 2009.  The grievance committee log confirms grievance #2-11809, in its non-emergency iteration, was processed and returned to Sykes on April 1, 2009.  (Doc. 70-3).  The Chief Administrative Officer's Response form confirms as much.  (Ex. G, p. 3).  Once he was confronted with documentation of the CAO's response, Sykes acknowledged he received it.[3]  However, Sykes claims that he did not receive a response back until June 25, 2009, testimony which the Court finds

---

[3] At best, Sykes' recollections about the January grievance were confused.  The Court found his testimony, as it pertained to the January grievance, inconsistent and not credible.

incredible (and impossible). A receipt stamp from the Office of Inmate Issues indicates the ARB received the grievance on May 5—a fact that is not in dispute. Thus, the Court can only conclude from this evidence that Mr. Sykes received the grievance office's response in a timely manner, on April 1, 2009, as their records reflect. Consequently, the ARB's receipt of Sykes' appeal on May 5 was past the thirty day deadline for Sykes to appeal. *See* **20 Ill. Admin. Code § 504.850(a).** According to the ARB record keeper's testimony, the grievance was returned to Sykes as past the time frame.[4]

To properly exhaust his administrative remedies, Sykes was required to "take *all* steps required by the prison's grievance system." ***Ford v. Johnson*, 362 F.3d 395, 397 (7th Cir. 2004). *See also Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006) ("This circuit has taken a strict compliance approach to exhaustion."); *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002) ("To exhaust remedies, a prisoner must file complaints and appeals in the place, and *at the time*, the prison's administrative rules require") (emphasis added).** He did not. Sykes filed his appeal to the ARB too late.

So Sykes did not properly exhaust his administrative remedies as it pertains to his January 30 grievance. The grievance process was not unavailable to Sykes—he simply failed to meet the process' requirements. ***See Pavey*, 544 F.3d at 742 (When "the failure to exhaust was the prisoner's fault . . . the case is over.").** Sykes' January 2009 grievance is insufficient to defeat any part of Defendants' summary judgment motions.

### 2. June Grievances

---

[4] Sykes provided letters in which he blames the grievance office for returning his January grievance in an untimely fashion. (Pl.'s Ex. 3, *Letter from 7-2-09*). But according to the logs, the grievance office processed the January grievance and returned it to him on April 1, 2009, well within the two months in which the office had to act. *See* **20 Ill. Admin. Code § 504.830(d).** Sykes does not state in his letter, or anywhere else, that he did not receive the grievance on April 1. Sykes only had a month to submit the re-submit the grievance as an appeal to the ARB. He failed to do so in the statutory timeframe.

It is Defendants' burden to overcome Sykes' assertion that he was thwarted in his attempt to exhaust his June grievances. Defendants have not shown Sykes failed to exhaust. Indeed, the evidence indicates the opposite: that Sykes submitted healthcare grievances, but those grievances were not processed or returned to Sykes.

Unfortunately for the defendants, the evidence, especially Officer Deen's testimony, actually supports Sykes' position. Sykes claims that, before appealing to the ARB, he filed the June grievances but never heard back from the grievance office. According to Deen, Sykes submitted several healthcare-related grievances in July (plausibly the late June grievances), but there was "no indication [those] grievances were processed." Officer Deen's log (which she looked at the morning of the *Pavey* hearing, but did not have during the hearing) indicates Sykes was attempting to complain about healthcare issues in July. (Doc. 70-2, p. 6). But when she searched for Sykes in a database that collates only *processed* grievances, his name did not appear in relation to those June or July grievances. Accordingly, when Officer Deen provided her affidavit regarding grievances submitted by Mr. Sykes, the July logbook page was entirely omitted, even though it apparently does show that Sykes submitted healthcare related grievances that month. When asked if she knew one way or another whether the June grievances had been addressed, Deen conceded, "[u]nfortunately I do not know, yes." Given this gap in IDOC records, the Court finds that Sykes' assertion he was thwarted in his attempts to exhaust the June grievances is credible.[5]

So regarding the June grievances, the prison grievance process was effectively rendered unavailable to Sykes. ***See Walker v. Sheahan*, 526 F.3d 973, 979 (7th Cir. 2000) (an inmate is not required to appeal his grievance if he submits it to the proper authorities but never receives a response); *Dole v. Chandler*, 438 F.ed 804, 809 (7th Cir. 2006) (a remedy can be unavailable to prisoner if the prison does not respond to the grievance).** Sykes is not required

---

[5] The Court does not find that the deficiency in Pinckneyville's records is due to intentional obfuscation.

to exhaust remedies that are unavailable to him. **42 U.S.C. § 1997e(a).** His claims against Farris and Hill can proceed, insofar as they are described in his June 22 and June 24 grievances.

### 3. October Grievances

Sykes claims to have filed emergency grievances against Nurse Farris on October 20 and 27, 2009. Sykes' Complaint, as it pertains to Farris and October 2009, is limited to allegations that he saw Farris on October 27, and that he did not receive subsequent pain medication on October 30, 2009.[6] (Doc. 14, p. 4). As such, any grievance he may have filed on October 20 cannot pertain to the instant suit.

That leaves Sykes' October 27 grievance. According to his response, Sykes filed an emergency grievance on October 27, which the CAO returned as unsubstantiated. (Doc. 61-1, p. 8). Rather than appealing it directly to the ARB, Sykes claims he then sent that grievance to his counselors, neither of whom responded to it. (*Id.*). Sykes problem here is that, even if he forwarded the grievance at the earliest possible date, he did not allow the grievance office adequate time to respond before he filed suit. Under the exhaustion scheme, the grievance office was allowed two months (until around December 27) to respond. **20 Ill. Admin. Code § 504.830(d).** Sykes filed suit on November 9. It is well-established that a prisoner cannot file suit until *after* the internal grievance process has run. ***Ford v. Johnson*, 362 F.3d 395, 398 (7th Cir. 2004) ("[E]xhaustion must precede litigation.").**

Further, though neither party introduced a written grievance for October 27, Pinckneyville counselors' records indicate that Counselor Dolce did return a prostate-related grievance on November 4, 2009. Nowhere does Sykes claim to have appealed such a grievance. Given an opportunity to discuss the late October grievances at the hearing, Sykes failed to do so. The Court

---

[6] During the evidentiary hearing, there was some discussion of a grievance from October 5, 2009. As they survived the threshold order, Sykes' October claims against Farris pertained to October 27 and 30, so the October 5 grievance (which, in any event does not name Farris or Hill) is irrelevant to Defendants' motions.

finds the evidence sufficient to show that the prison did respond to Sykes' October grievances, but that he failed to exhaust his remedies before filing suit.[7] Regarding the October 27 grievance, Sykes has not fulfilled the requirements of the Illinois exhaustion scheme. Sykes claims against Farris, insofar as they revolve around late October 2009, cannot proceed.

<u>CONCLUSION</u>

For the reasons set forth above, it is **RECOMMENDED** that both Farris' Motion for Summary Judgment (Doc. 52) and Hill's Motion for Partial Summary Judgment (Doc. 54) be **GRANTED IN PART and DENIED IN PART**. Because Sykes failed to exhaust his administrative remedies *except* as to his grievances from February 2009 and June 2009, the following claims remain:

1.    That Defendant Farris violated Sykes' *Eighth Amendment* rights via deliberate indifference to Sykes' prostate problems on or about April 1 to April 7, 2009 (the dates referred to in Sykes' June 22, 2009 grievance);

2.    That Defendant Hill violated Sykes' *Eighth Amendment* rights via deliberate indifference to Sykes' alleged prostate problems on or about June 24, 2009;

3.    That Defendant Hill's failure to address Sykes' concerns about a possible skin rash, a symptom of crabs or MRSA, constitutes deliberate indifference to Sykes' serious medical needs, in violation of the *Eighth Amendment*.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 73.1(b), the parties may object to any or all of the proposed dispositive findings in this Recommendation within **fourteen (14) days** of being served with a copy. The failure to file a timely objection may result in the waiver of the right to

---

[7] Though it predates the relevant date in Sykes' claims, it should be noted that Counselor Lutz returned a prostate-related grievance on October 21, 2009. Sykes does not claim to have appealed any of these October grievances to the ARB.

challenge this Recommendation before either the District Court or the Court of Appeals. *See, e.g., Snyder v. Nolen*, 380 F.3d 279, 284 (7th Cir. 2004).

**IT IS SO ORDERED.**

**DATED:  January 17, 2012.**

/s/ **Stephen C. Williams**
STEPHEN C. WILLIAMS
**United States Magistrate Judge**